# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

SEARCH AND SOCIAL MEDIA        )
PARTNERS, LLC,                 )
                               )
      Plaintiff,        )
                               )
v.                             )    C.A. No. 17-1120-LPS-CJB
                               )
FACEBOOK, INC., INSTAGRAM, INC., )
and INSTAGRAM LLC,             )
                               )
      Defendants.       )

---

Stephen B. Brauerman, Sara E. Bussiere, BAYARD, P.A., Wilmington, Delaware

Seth H. Ostrow, Jeffrey P. Weingart, Antonio Papageorgiou, MEISTER SEELIG & FEIN LLP, New York, New York

    Attorneys for Plaintiff


Jack B. Blumenfeld, Karen Jacobs, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware

Heidi L. Keefe, Mark R. Weinstein, Benjamin G. Damstedt, COOLEY LLP, Palo Alto, California
Emily Terrell, COOLEY LLP, Washington, D.C.

    Attorneys for Defendants

## MEMORANDUM OPINION

September 28, 2018
Wilmington, Delaware

**STARK, U.S. District Judge:**

Presently before the Court is Defendants' Facebook Inc. ("Facebook") and Instagram LLC's ("Instagram" and collectively with Facebook, "Defendants") motion to dismiss for failure to state a claim (the "Motion"), filed pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.I. 8)[1] Defendants argue that Plaintiff Search and Social Media Partners, LLC's ("SSMP" or "Plaintiff") asserted United States Patents Nos. 8,620,828 (the "'828 patent") and 8,719,176 (the "'176 patent") (collectively, the "asserted patents" or the "patents-in-suit") are directed to non-patent-eligible subject matter pursuant to 35 U.S.C. § 101 ("Section 101"). For the reasons that follow, the Court will grant the Motion as to the asserted claims of the '828 patent and deny it as to the asserted claims of the '176 patent, without prejudice to Defendants' ability to re-present the latter § 101 challenge at the summary judgment stage.

## I.    BACKGROUND

The '828 patent, entitled "Social Networking System, Method and Device," issued on December 31, 2013. (D.I. 1 Ex. A) The '176 patent, entitled "Social News Gathering, Prioritizing, Tagging, Searching and Syndication," issued on May 6, 2014. (*Id.* Ex. B) The '878 patent is a continuation application of the '176 patent, and the patents therefore share a specification. (*See* D.I. 15 at 3 n.7) Both patents claim priority to application No. 60/486,630, filed on July 11, 2003.

The Abstract of the '828 patent explains that its claims recite "[a] social networking system, method and device [that] provides a social network environment in which one user subscribes to a newsfeed or ticker related to another user." ('828 patent at Abstract) The

---

[1] Defendants assert, and Plaintiff does not dispute, that Instagram, Inc. no longer exists and has not been served with the Complaint. (D.I. 9 at 1 n.1; *see also* D.I. 15 at 1) If so, the parties should file a stipulation seeking to correct the case caption.

Abstract of the '176 patent explains that the claims are directed to "[a] search method [that] allows user-definition of search algorithms and includes a ranking method that assigns relevancy scores to documents by polling users[,] [a] user-generated news service [that] allows users to syndicate news[, and] [a] user-generated resource [that] allows users to create, approve and disapprove of submissions." ('176 patent at Abstract)

## II.     LEGAL STANDARDS

### A.     Rule 12(b)(6) Motion to Dismiss

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014). A complaint may not be dismissed, however, for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 346.

2

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

The Court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

### B.      Patentable Subject Matter

Under 35 U.S.C. § 101, "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." There are three exceptions to § 101's broad patent-eligibility principles: "laws of nature, physical phenomena, and abstract ideas." *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980). "Whether a claim recites patent eligible subject matter is a question of law which may contain disputes over underlying facts." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

3

In *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S. Ct. 1289 (2012), the Supreme Court set out a two-step "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). First, courts must determine if the claims at issue are directed to a patent-ineligible concept ("step one"). *See id.* If so, the next step is to look for an "'inventive concept' – i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself" ("step two"). *Id*. The two steps are "plainly related" and "involve overlapping scrutiny of the content of the claims." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016).

At step one, "the claims are considered in their entirety to ascertain whether their character *as a whole* is directed to excluded subject matter." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015) (emphasis added); *see also Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016) ("*Affinity Labs I*") (stating first step "calls upon us to look at the 'focus of the claimed advance over the prior art' to determine if the claim's 'character as a whole' is directed to excluded subject matter").

In conducting the step one analysis, courts should not "oversimplif[y]" key inventive concepts or "downplay" an invention's benefits. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337-38 (Fed. Cir. 2016); *see also McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016) ("[C]ourts 'must be careful to avoid oversimplifying the claims' by looking at them generally and failing to account for the specific requirements of the claims.") (quoting *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016)).

At step two, courts must "look to both the claim as a whole and the individual claim elements to determine whether the claims contain an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *McRo*, 837 F.3d at 1312 (internal brackets and quotation marks omitted). The "standard" step two inquiry includes consideration of whether claim elements "simply recite 'well-understood, routine, conventional activit[ies].'" *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) (quoting *Alice*, 134 S. Ct. at 2359). "Simply appending conventional steps, specified at a high level of generality, [is] not ***enough*** to supply an inventive concept." *Alice*, 134 S. Ct. at 2357 (internal quotation marks omitted; emphasis in original).

However, "[t]he inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art." *Bascom*, 827 F.3d at 1350. In *Bascom*, the Federal Circuit held that "the limitations of the claims, taken individually, recite generic computer, network and Internet components, none of which is inventive by itself," but nonetheless determined that an ***ordered combination*** of these limitations was patent-eligible under step two. *Id.* at 1349.

The Federal Circuit recently elaborated on the step two standard, stating that "[t]he question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact. Any fact, such as this one, that is pertinent to the invalidity conclusion must be proven by clear and convincing evidence." *Berkheimer*, 881 F.3d at 1368; *see also Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018) ("While the ultimate determination of eligibility under § 101 is a question of law, like many legal questions, there can be subsidiary

5

fact questions which must be resolved en route to the ultimate legal determination."); *Automated Tracking Solutions, LLC v. Coca-Cola Co.*, 723 F. App'x 989, 995 (Fed. Cir. 2018) ("We have held that 'whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact.'") (quoting *Berkheimer*, 881 F.3d at 1368).

"Whether a particular technology is well-understood, routine, and conventional goes beyond what was simply known in the prior art. The mere fact that something is disclosed in a piece of prior art, for example, does not mean it was well-understood, routine, and conventional." *Berkheimer*, 881 F.3d at 1369; *see also Exergen Corp. v. Kaz USA, Inc.*, 725 F. App'x 959, 965 (Fed. Cir. 2018) ("Something is not well-understood, routine, and conventional merely because it is disclosed in a prior art reference. There are many obscure references that nonetheless qualify as prior art.").

As part of the step two "inventive concept" inquiry, the Federal Circuit has looked to the claims as well as the specification. *See Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1271 (Fed. Cir. 2016) ("*Affinity Labs II*") ("[N]either the claim nor the specification reveals any concrete way of employing a customized user interface."). Still, it is not enough just to disclose the improvement in the specification; instead, the Court's task becomes to "analyze the asserted claims and determine whether they ***capture these improvements***." *Berkheimer*, 881 F.3d at 1369 (emphasis added). In other words, "[t]o save a patent at step two, an inventive concept must be ***evident in the claims***." *RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017) (emphasis added); *see also Alice*, 134 S. Ct. at 2357 ("[W]e must examine the ***elements of the claim*** to determine whether it contains an 'inventive concept.'")

(emphasis added); *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016) ("The § 101 inquiry must focus on the language of the Asserted Claims themselves.").

At both steps one and two, it is often useful for the Court to compare the claims at issue with claims that have been considered in the now considerably large body of decisions applying § 101. *See Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1294 (Fed. Cir. 2016).

Finally, as a procedural matter, the Federal Circuit has observed frequently that § 101 disputes may be amenable to resolution on motions for judgment on the pleadings, motions to dismiss, or summary judgment. *See, e.g.*, *Berkheimer*, 881 F.3d at 1368 ("Whether a claim recites patent eligible subject matter is a question of law which may contain disputes over underlying facts. Patent eligibility has in many cases been *resolved on motions to dismiss or summary judgment. Nothing in this decision should be viewed as casting doubt on the propriety of those cases.* When there is no genuine issue of material fact regarding whether the claim element or claimed combination is well-understood, routine, conventional to a skilled artisan in the relevant field, this issue can be decided on summary judgment as a matter of law.") (emphasis added); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1351-52 (Fed. Cir. 2014) (affirming grant of Rule 12(c) motion for judgment on pleadings for lack of patentable subject matter); *Intellectual Ventures I LLC v. Symantec Corp.*, 725 F. App'x 976, 978 n.1 (Fed. Cir. 2018) (affirming grant of summary judgment of patent ineligibility and stating *Berkheimer* "does not compel a different conclusion").

## III.    DISCUSSION

### A.    '828 Patent

Plaintiff asserts that Facebook directly and indirectly infringes claims 11-14 and 18-20 of the '828 patent. (D.I. 1 at ¶¶ 37, 38, 44-45)  Claims 11 and 18 are independent claims, and they are reproduced below:

> 11.  A system for use in a social network environment comprising:
>
> a first computer system communicatively coupled to a first computer network, said first computer system comprising a data processor and a memory and being configured for at least partly providing a first social network environment, the first social network environment having a multitude of different social groups;
>
> an account component configured for storing a first user account in said memory and storing a second user account, said second user account being different from said first user account;
>
> a subscription component for establishing a first subscription in which said second user account is subscribed to said first user account;
>
> a real-time news ticker component configured for providing, per said first subscription, a plurality of real-time news items pertaining to said first user account when said second user account is in use; and wherein:
>
> said first social network environment comprises a first social group that is one of said multitude of different social groups, said first social group being selected from the group consisting of:
>
> (i) a group pertaining to a first academic institution;
>
> (ii) a group pertaining to a first religious institution;
>
> (iii) a group pertaining to a first club; and
>
> (iv) a group pertaining to a first interest;
>
> and wherein:

8

said plurality of real-time news items comprises a first real-time news item, said first real-time news item comprising a first URL or a first link to said first URL;

and wherein:

a security comparison check is performed of said first URL such that said first URL is verified to satisfy a first criterion for inclusion in said plurality of real-time news items.

('828 patent, col. 53:25-60)

18. A social network method comprising:

receiving first account information at a first computer system via a first computer network, said first computer system comprising a data processor and a memory;

storing said first account information in a first user account in said memory;

storing a second user account, said first user account being different from said user account;

verifying, via a first computer network, a relationship between said first user account and a first entity, wherein said first entity is one of a multitude of different entities in said social network;

receiving, via said first computer network a first subscription in which said second user account is subscribed to said first user account; and

distributing, via said first computer network, when said second user account is in use, a real-time news ticker per said first subscription, said real-time news ticker comprising real-time news related to said first user account or said first entity.

(*Id.*, col. 54:37-56)[2]

---

[2] "If there are claim construction disputes at the Rule 12(b)(6) stage, . . . either the [district] court must proceed by adopting the non-moving party's constructions . . . or the court must resolve the disputes to whatever extent is needed to conduct the [Section] 101 analysis, which may well be less than a full, formal claim construction." *Aatrix Software, Inc.*, 882 F.3d at 1125 (citations omitted). Here, for purposes of Defendants' Motion, Defendants do not present disputes with respect to Plaintiff's proposals, asserting that "the outcome of the section 101 analysis remains the same even if the Court adopts SSMP's proposed constructions." (D.I.

## 1. Step One

At step one, Facebook argues that the asserted claims of the '828 patent are directed to the abstract idea of "providing news items to a subscriber who is part of a group." (D.I. 9 at 8; *see also* D.I. 18 at 2-3) The Court agrees that that concept, without more, is "devoid of a concrete or tangible application." *Ultramercial, Inc. v. Hulu LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014). The Federal Circuit has consistently found that collecting, analyzing, and displaying information, without more, is an abstract idea. *See, e.g.*, *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1344-45 (Fed. Cir. 2018) (citing cases).

The claims of the '828 patent are directed to the abstract idea of providing news items to a subscriber who is part of a group. The claims describe displaying news related to a first user account to a second user account subscribed to the first user account, via a real-time news ticker. ('828 patent, cols. 53:25-60, 54:37-56) Likewise, the Abstract begins by stating that "[a] social networking system, method and device provides a social network environment in which one user subscribes to a newsfeed or ticker related to another user." (*Id.* at Abstract) Indeed, even Plaintiff describes its invention in the '828 patent as reciting "online social networks which allow users to subscribe to news items posted by users with whom they are associated [and] the use of real-time news feeds and tickers for presenting such news items." (D.I. 15 at 1)

Plaintiff's arguments to the contrary are not persuasive. Plaintiff generally suggests that the claims survive step one of the *Alice* test because they provide a "specific implementation of a solution" to "technical problems" in the art. (D.I. 15 at 1, 13)[3] But the need to "provid[e] a user

---

18 at 7) In its analysis, then, the Court applies Plaintiff's proposed constructions. (*See* D.I. 15 at 9-10)

[3] Plaintiff's Complaint includes allegations that problems regarding search engine services and searching web pages were purportedly solved by the inventions. (D.I. 1 at ¶¶ 13-16,

with information that is better suited to the user" is a "non-technical problem" that has long

existed, even before the advent of computers. *See, e.g.*, *Sound View Innovations, LLC v.*

*Facebook, Inc.*, 204 F. Supp. 3d 655, 662 (D. Del. 2016); *see also Affinity Labs I*, 838 F.3d at

1258 (describing "information distribution" as "broad and familiar concept"); *Telebuyer, LLC v.*

*Amazon.com, Inc.*, 2015 WL 4493045, at \*12 (W.D. Wash. July 23, 2015) ("The problem of

information overload . . . is as old as human commerce itself.").

As for the "specific implementation of a solution" to the problem of information overload

purportedly recited in the claims, the "technical infrastructure" supposedly claimed (D.I. 15 at 4)

is made up of generic components such as "computer system comprising a data processor and a

memory," "servers and associated software," and "a scrolling electronic display of news items on

a computer screen." ('828 patent, cols. 53:25-60, 54:37-56; D.I. 9 at 3-4; D.I. 18 at 3-4)[4]  These

---

21)  However, as Facebook points out, "the asserted claims do not recite a search engine and are
not directed to improving search engines."  (D.I. 18 at 9)  Therefore, the Court does not further
consider these allegations in assessing the eligibility of the '828 patent.

[4] The specification acknowledges that the hardware components and software relevant to
the claims were known at the time of the invention:

> Computers – which term is meant to include for purposes of this
> document all manner of computer and telecommunication
> hardware and software, including CPUs, RAM, ROM, disk drives,
> removable data storage media, ports, cables, routers, switches,
> interface devices, keyboards, point-and-click devices, wireless
> transmission/reception hardware, audio and video display
> monitors, modems, cards, power supplies, networks, networking
> equipment, operating systems, etc. – are known.  Software
> comprising instructions stored on digital media whereby
> information is processed and steps are performed is known.
> Protocols for the storage and retrieval, both locally and remotely,
> of information using electronic devices are known.  A URL
> (Uniform Resource Locator), a URI (Uniform Resource Identifier),
> a file name and a file path are known.

('828 patent, cols. 5:65-6:12)

generic components simply provide an environment in which to carry out the abstract idea and do not satisfy step one. *See, e.g.*, *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1338 (Fed. Cir. 2017) (affirming conclusion of abstractness of claims reciting "only conventional computer components . . . to carry out the recited abstract idea"); *3G Licensing, S.A. v. Blackberry Ltd.*, 302 F. Supp. 3d 640, 652 (D. Del. 2018) (rejecting plaintiff's argument that claims were directed to specific implementation of solution in computer field where "all of the components of the claims are generic devices" because "[g]eneric devices do not make a claim non-abstract (as that concept is applied at step one)").

According to Plaintiff, the real-time news ticker component "improves the capabilities of the system as a whole" by: (1) serving online content in real-time; and (2) distributing more relevant content. (D.I. 15 at 13) With respect to the "real-time" delivery of information, the claims in *Electric Power Grp., LLC*, 830 F.3d at 1351, similarly recited "systems and methods for performing real-time performance monitoring of an electric power grid by collecting data from multiple data sources, analyzing the data, and displaying the results," and the Federal Circuit found those claims to be directed to an abstract idea. *See also, e.g.*, *Two-Way Media*, 874 F.3d at 1340 (affirming finding that claims were directed to abstract idea of "monitoring the delivery of real-time information to user(s) or measuring such delivery for commercial purposes"). With respect to the alleged improvement due to the delivery of relevant content, the Federal Circuit has explained that "the basic concept of tailoring content to a user . . . is an abstract idea." *Affinity Labs II*, 838 F.3d at 1271; *see also Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1370-71 (Fed. Cir. 2015) (tailoring content based on information known about customer "is an abstract idea").

Finally, Plaintiff notes that claim 11 recites a security comparison check that is performed on the first URL to verify that it should be included in the real-time news ticker, and claim 11 recites the step of verifying a relationship between the first user account and a first entity, which "both further affirm the technological settings to which these claims are directed." (D.I. 15 at 13) But here, again, simply requiring verification of the relevancy of the news item for claim 11, or the relationship between the user and said user's entity for claim 18, does not render the claims directed to something more than an abstract idea, even if such a step demonstrates that the claims take place in a "technological environment." *Alice*, 134 S. Ct. at 2358; *see also Prism Techs. LLC v. T-Mobile USA, Inc.*, 696 F. App'x 1014, 1017 (Fed. Cir. 2017) (concluding that claims were directed to "abstract idea of providing restricted access to resources") (internal quotation marks omitted).

The Court's conclusion of abstractness applies to the asserted dependent claims as well. Facebook argued in its opening brief that the asserted dependent claims of the '828 patent did not add any concrete limitations that save the claims at step one. (D.I. 9 at 11-12) Plaintiff did not address the dependent claims in its responsive brief. (*See* D.I. 18 at 6 n.4) Facebook is correct that dependent claims 12, 13, 14, and 19 are directed to the same abstract idea as the independent claims; simply enumerating different types of groups (claims 12 and 19), requiring confirmation that the first user account is affiliated with the group (claim 13), and reciting that the first real-time news item further comprises "first content" from the "first user account" (claim 19) do not make a material difference. ('828 patent, cols. 53:61-54:12, 54:57-61) Dependent claim 20 recites additional limitations directed to "generating revenue" from providing an advertisement, collecting and selling information about users and user activities, processing a first user-to-user payment, or processing a first user-to-user sale. (*Id.*, col. 54:62-55:5) This concept, without

more, amounts to another abstraction. *See Morsa v. Facebook*, 77 F. Supp. 3d 1007, 1014 (C.D. Cal. Dec. 2014) ("targeting advertisements to certain customers" is abstract idea).

## 2. Step Two

Plaintiff argues that the claims of the '828 patent recite limitations amounting to significantly more than the abstract idea of providing news items to a subscriber who is part of a group, such as:

- "a first social network environment" that includes a collection of servers and associated software that provide a website and applications with dynamically generated pages, which allow users to connect and interact with each other via subscriptions to one or more social groups and to other users;

- the "real-time news ticker component" that provides a scrolling electronic display of news in real-time for user accounts, with such news for display selected in connection with a user's database associations between user account records and common subscriptions; and

- Claim 11's "security comparison check that verifies the URL associated with a news item" to be displayed by the news ticker component.

(D.I. 15 at 18) According to Plaintiff, "[t]hese claim elements, individually and as a whole, address a technical problem unique to this technological setting (information overload in a social network setting) and direct the manner in which the solution is achieved with specificity." (*Id.*)

In the Court's view, these claim elements do not transform the '828 patent's asserted claims into a patent-eligible application of the abstract idea of providing news items to members of a group. Just as in step one, at step two "limiting the claims to the particular technological environment [of a social network] is, without more, insufficient to transform them into patent-eligible applications of the abstract idea at their core." *Elec. Power Grp.*, 830 F.3d at 1354; *see*

14

*also Interval Licensing LLC*, 896 F.3d at 1346 ("It is well-settled that placing an abstract idea in the context of a computer does not 'improve' the computer or convert the idea into a patent-eligible application of that idea.").  Narrowing the abstract idea of providing news items to members of a group in a social network system by use of a real-time news ticker does not state an inventive concept "in the realm of application of the information-based abstract ideas," as the claims "do not include any requirement for performing the claimed function[] of . . . displaying in real time [information] by use of anything but entirely conventional, generic technology." *Elec. Power Grp.*, 830 F.3d at 1356; *see also, e.g.*, *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290-91 (Fed. Cir. 2018) ("If a claim's only 'inventive concept' is the application of the abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea.").

The "social network environment" element of the claim is simply comprised of generic computer components without much specificity.  The "[s]upport" cited for Plaintiff's construction of this element underscores this conclusion, as it includes cites to numerous figures of the patent as well as portions of the specification discussing a user browsing an online auction system, a statement that language evolves faster than dictionaries, literary style books, grammar books, and a system in which a toolbar can display a variety of content.  (D.I. 15 at 9) (citing '176 patent, Figs. 1-3, 9-10, 13, 15, 23, 28A, 28E, 37, 57E, 83, cols. 5:9-12, 7:17-23, 13:57-61; 22:59-23:13)

With respect to news tickers, the Federal Circuit has recently noted that the provision of information is a "basic and longstanding practice" that can be accomplished by, for example, the "use of a breaking news ticker across the bottom of [a television station's] screen." *Interval Licensing LLC*, 896 F.3d at 1344.  Providing news in this way on a computer, in the context of a

social network environment, without more, does not amount to a patent-eligible application of providing news items to subscribers. *See EveryMD.com LLC v. Facebook, Inc.*, 2017 WL 3453294, at *10 (C.D. Cal. May 10, 2017) (concluding, as to claims relating to methods enabling Internet users to communicate with members of designated group, that there was no inventive concept because "the claimed invention uses existing technologies and components to accomplish a known means of transmitting information between telephones and computers"). Aside from the fact that the real-time news ticker will have a URL or link thereto, there are no claimed implementation details for the news ticker feature, which indicates that it utilizes only existing computer capabilities and thus does not satisfy the inventive concept requirement.[5]

Finally, inclusion of a generic security comparison check in the system does not make the claims patent eligible. Plaintiff offers no construction for this term, and there are no limitations in the claims regarding how such a check is accomplished.

It is true that the Federal Circuit has recently explained that "[t]he question of whether a claim element or a combination of elements is well-understood, routine, and conventional to a skilled artisan in the relevant field is a question of fact." *Berkheimer*, 881 F.3d at 1368.

---

[5] Plaintiff does not allege to have invented the concepts of a social network environment or a news ticker. (*See, e.g.*, D.I. 9 at 4) And the specification does not appear to suggest that utilizing a real-time news ticker component in a social media network environment is an unconventional improvement over prior art social network interfaces. Indeed, aside from the references to "social network" in the '828 patent's title and Abstract, the term and its variations do not appear again until the recitation of the claims. A "ticker" is only briefly discussed in the specification, and is described as an "optional feature" that can be added on to a toolbar to which a "user[] can subscribe so as to be presented with scrolling headlines that are provided by a chosen source." ('828 patent, col. 30:59-62; *see also id.*, col. 7:16-18) The specification earlier acknowledges that internet toolbars "whereby features are included in or added to a Web browser, such as Microsoft Internet Explorer, are known." (*Id.*, col. 5:40-43) The asserted claims do not recite a toolbar (*see* D.I. 9 at 4), and there is no reference to a toolbar in Plaintiff's construction for "real-time [news] ticker" (D.I. 15 at 10). The specification underscores the Court's conclusion at step two that the asserted claims of the '828 patent recite patent ineligible subject matter.

However, "not every § 101 determination contains genuine disputes over the underlying facts material to the § 101 inquiry" and the Court must consider the pleadings and the intrinsic record to determine if they evince an inventive concept. *Id.* at 1368-70. While Plaintiff asserts in a footnote of its briefing that "material issues of fact exist, including factual issues relating to state of the art in the technological environment, which may need to be resolved before the Court can decide on the eligibility of the claims," it does not further elaborate what those factual issues are. (*See* D.I. 15 at 6 n.10) There are no factual allegations here that, taken as true, prevent resolving the eligibility question as a matter of law.

Plaintiff lastly argues that the asserted claims of the '828 patent disclose an inventive concept because they recite a specific solution that does not preempt the broad concept of providing news items to a subscriber who is part of a group. (*Id.* at 18-19) However, while preemption concerns are "the basis for the judicial exceptions to patentability . . ., the absence of complete preemption does not demonstrate patent eligibility." *BSG Tech. LLC*, 899 F.3d at 1291 (internal quotation marks and citations omitted); *see also OIP Techs., Inc. v. Amazon.com*, 788 F.3d 1359, 1362-63 (Fed. Cir. 2015) ("[T]hat the claims do not preempt all price optimization or may be limited to price optimization in the e-commerce setting do not make them any less abstract.").

In sum, the asserted claims of the '828 patent require no more than a generic computer to perform generic computer functions that are well-understood, routine, and conventional. There is no improvement to the functioning of the computer itself captured in these claims. Rather than claiming a specific way to solve a technological problem, the asserted claims recite a well-

known and conventional way to provide information to users.[6]  Hence the Court will grant

Defendants' Motion with respect to the '828 patent.

### B.    '176 Patent

Plaintiff asserts that both Facebook and Instagram directly and indirectly infringe claims

6-7, 9-12, 14-16, and 18-19, and that Facebook further directly and indirectly infringes claims

20-30 of the '176 patent.  (D.I. 1 at ¶¶ 48, 54, 55, 58, 64, 65)  Claims 6, 14, 21, and 27, which are

independent claims, are reproduced below:

> **6.**  A computer-implemented method, said computer-implemented
> method comprising the following:
>
> receiving at a first computer system, via a computer network, first
> information, said first computer system comprising at least a
> processor and a memory;
>
> registering a first account;

---

[6] In support of its argument that the asserted claims of the '828 patent are patent-eligible, Plaintiff points out that Facebook has "dozens" of its own patents "claiming aspects of social networks and newsfeeds, and has argued for the patentability of many of them over *Alice* rejections." (D.I. 15 at 6)  Plaintiff attached to its answering brief articles and Facebook postings regarding Facebook's newsfeed, a Facebook patent covering a method for displaying a newsfeed in a social network environment, a portion of prosecution history in which Facebook argues to the Examiner how its invention directed to categorizing stories in a social network system newsfeed are patent-eligible, and listings of Facebook's patents regarding newsfeeds and social networking systems. (D.I. 16, Exs. A-G)  However, the Court is resolving a motion to dismiss under Rule 12(b)(6), and therefore will not consider these documents. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426; *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (noting that courts faced with a motion to dismiss must generally limit their consideration solely to "the allegations contained in the complaint, exhibits attached to the complaint[,] and matters of public record"); *see also Morsa*, 77 F. Supp. 3d at 1014 (rejecting plaintiff's argument that "the Court should view Facebook's arguments as to the claims' abstractness with 'extreme skepticism' in light of allegedly contrary positions Facebook has taken before the Patent Office with respect to patents not at issue in the case" because, even accepting that as true, "Facebook's contrary arguments before another tribunal do not permit this Court to confer patent eligibility on otherwise ineligible subject matter"), *aff'd*, 622 F. App'x 915 (Fed. Cir. 2015).

receiving, via said computer network, second information, said
second information indicating or comprising at least a first
approval, said first approval pertaining to said first information;

determining, by computer, a first measure of popularity, said first
measure of popularity pertaining to said first information and being
based at least in part on said second information;

at least partly causing, by computer, display of first indicia,
said first indicia indicating said first measure of popularity; and

promoting, by computer, said first information from a first status to
a second status, said second status being different from said first
status, the promoting said first information from said first status to
said second status being performed at least partly according to said
first measure of popularity;

wherein:

said first account is associated with at least a first real-time
newsfeed or ticker for conveying a plurality of real-time news
items, said plurality of real-time news items comprising at least a
first news item, said first news item being related to said first
account.

('176 patent, col. 54:1-28)

**14.** A system comprising:

a first computer system communicatively coupled to a computer
network, said first computer system comprising at least a processor
and memory;

a registration component, said registration component being
configured for registering a first user or account;

a publication component, said publication component being
configured for:

receiving a first submission, said first submission being associated
with said first user or account;

determining a first quantity, said first quantity being based at least
in part on how many users like said first submission; and

publishing said first submission in a first manner when said first
quantity satisfies a first criterion; and

a news feed or ticker component, said news feed or ticker
component configured for providing a plurality of real-time news
feeds or tickers, said plurality of real-time news feeds or tickers
comprising at least a first real-time news feed or ticker, said first
real-time news feed or ticker configured for providing a plurality
of real-time news items, said plurality of real-time news items
comprising at least a first news item, said first news item being
related to said first user or account.

(*Id.*, col. 55:13-37)

> **21.** A computer-implemented method, said computer comprising
> at least a processor and a memory and being connected to a first
> computer network, said memory comprising at least a first news
> database for storing a plurality of news submissions, the method
> comprising:
>
> registering a first user account;
>
> receiving, via said computer network, a URL and first term, said
> first term comprising a word or phrase;
>
> providing, via said first computer network, at least one of said
> URL and said first term to a community of users;
>
> determining, by computer, a first score, said first score pertaining
> to at least one of said URL and said first term, said first score
> being based at least partly on a measurement of popularity;
>
> at least partly causing, via said first computer network, display of a
> first real-time news feed or ticker, said first real-time news feed or
> ticker comprising or conveying a plurality of real-time news items,
> said plurality of real-time news items comprising at least a first
> item, said first item relating to said first user account.

(*Id.*, col. 56:9-29)

> **27.** A system comprising:
>
> a first computer system connected to a computer network, said first
> computer system comprising at least a processor and a memory;
>
> a first component, said first component being configured for:

registering a first user account in said memory;

a second component, said second component being configured for:

receiving, by way of said computer network, (i) a URL and (ii) first content, said first content being related to said URL;

providing, by way of said computer network, at least one of said URL and said first content to a first community; and

determining, by computer, a first quantity, said first quantity pertaining to an opinion of said first community, said opinion of said first community pertaining to at least one of said URL and said first content; and

a third component, said third component being configured for: providing a plurality of real-time news feeds or tickers, said plurality of real-time news feeds or tickers comprising at least a first real-time news feed or ticker, said first real-time news feed or ticker comprising or conveying a plurality of real-time news items, said plurality of real-time news items comprising at least a first news item, said first news item being related to said first user account.

(*Id.*, cols. 56:56-57:16)[7]

### 1.    Step One

At step one, Defendants argue that the asserted claims of the '176 patent are directed to the abstract idea of promoting a news item based on its popularity. (D.I. 9 at 12) In response, Plaintiff does not suggest that the claims are directed to a different concept. Indeed, Plaintiff describes the claims of the '176 patent as "provid[ing] real-time newsfeeds or tickers in which the status of *news items are promoted based on their measure of popularity* computed based on approvals of such items and displayed in indicia on a computer display." (D.I. 15 at 4) (emphasis added) Plaintiff's argument for why the claims of the '176 patent are not directed to

---

[7] For purposes of this Motion, the Court adopts Plaintiff's proposed constructions. (*See* D.I. 15 at 9-10)

an abstract idea is, instead, that the claims purportedly solve the technical problem of "information overload" – which "causes the most relevant information to particular users to get lost" – "with specific novel implementations of the solution." (*Id.* at 16)

The Court agrees with Defendants that promoting information based on its popularity is an abstract idea. *See Ultramercial, Inc.*, 772 F.3d at 715. Promoting news according to its popularity among viewers is a way in which to filter or tailor information, a concept courts have repeatedly concluded is abstract. *See, e.g.*, *Elec. Power Grp.*, 830 F.3d at 1353 (holding that "collecting information, analyzing it, and displaying certain results of the collection and analysis" is abstract idea); *Affinity Labs II*, 838 F.3d at 1271 ("[T]ailoring of content based on information about the user – such as where the user lives or what time of day the user views the content – is an abstract idea that is old as providing different newspaper inserts for different neighborhoods."); *Cap. One Bank (USA)*, 792 F.3d at 1369 (concluding that tailoring news based on information known about customer is abstract idea).

The asserted claims of the '176 patent describe methods and systems for "the measuring of popularity of real-time news items based on feedback from users both to promote the status of such news items in the news feed and indicate such popularity to users." (D.I. 15 at 1) In essence, the claims recite that a first account is registered; information from a user is received; other users may like, or vote in favor of, such information (which can be displayed to other users); such information is promoted and published based on its popularity; and the user account is associated with a real-time newsfeed or ticker that conveys news related to that account. (*See, e.g.*, '176 patent, col. 54:1-28; 55:13-37) The Court agrees with Facebook that the "character as a whole" of these claims is directed to the abstract idea of promoting information based on popularity. Here again, as described above in the Court's discussion of the '828 patent,

information overload is not a problem newly-arisen with the advent of the internet, but instead is one "as old as human commerce itself." *Telebuyer*, 2015 WL 4493045, at \*12. The alleged solution to this problem claimed in the '176 patent simply uses conventional computer hardware and software. (*See* '176 patent, cols. 5:65-6:8) As described above, news tickers have long been known as a vehicle for providing news, and there is nothing specialized about a computer network analyzing and publishing information, including information that is tailored for a particular user, or processing URLs. (*See id.*, cols. 5:65-6:12)

In sum, the claims, when considered in conjunction with Plaintiff's proposed claim constructions, merely add conventional computer components to the known concept of the promotion of information based on its popularity. The '176 patent claims are directed to an abstract idea.[8]

### 2. Step Two

At Step two, there is just enough in the record that, when considered in the light most favorable to Plaintiff, indicates that these claims may contain an inventive concept. At this stage of the proceedings, the Court cannot say that the ordered combination of the claims – in describing measuring the popularity of information based on feedback from users to promote the status of such news items in a real-time newsfeed or ticker and displaying to users such popularity – does not amount to a non-conventional and non-generic arrangement of known, conventional activities.

---

[8] As with the '828 patent, Facebook argued in its opening brief that the asserted dependent claims of the '176 patent did not add any concrete limitations that save the claims at step one (D.I. 9 at 14-15), and Plaintiff did not address the dependent claims in its responsive brief (*see* D.I. 18 at 7 n.5). The Court agrees with Facebook.

23

Unlike the asserted claims of the '828 patent, which generically and without detail claim the use of a real-time news ticker in a social network environment, the claims of the '176 patent provide more details about how it is that the real-time news ticker will display information. That is, users will provide feedback on information submitted by other users of the claimed system through, for example, voting on such information (claim 6), liking submissions (claim 14), and voting on a URL and a word (claim 21), with the results dictating the publication of the information via the real-time newsfeed.

Defendants argue that the claims of the '176 patent fail to "recite [a] specific or discrete implementation" of the abstract concept of promoting news items based on popularity. (D.I. 9 at 18) But this seems to ignore the fact that the claims require the promotion of news items based on their popularity as voted on by users of the system vis-à-vis a real-time news ticker component. The Federal Circuit has explained that "a new combination of old steps is patentable, as is a new process using an old machine or composition," such that "subject matter eligibility must exist even if it was obvious to use the old steps with the new machine or composition." *Ultramercial, Inc.*, 722 F.3d at 1347. With the limitations of the claims of the '176 patent taken together as an ordered combination, it appears that they may be found to "recite a specific, discrete implementation of the abstract idea" of promoting information based on its popularity. *Bascom*, 827 F.3d at 1349-50 (finding that while individual claim limitations recited "generic computer, network and Internet components, none of which is inventive by itself," still "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces").

The specification explains that in the realm of internet search engines, the prior art citation ranking methodology for searching and ranking the relevancy of web pages was

problematic. ('176 patent, col. 4:60-65)  This method failed to capture the difference between a positive and negative reference, so "[w]hat is needed . . . is a ranking methodology based upon the actual opinions of the user community rather than upon hit-or-miss surrogates for these opinions." (*Id.*, col. 5:4-6)  Later, the specification discusses in more detail how the invention improves over the prior art relevancy ranking methodology by creating a database of word votes (which is a pairing of a word and a URL), which is then populated over time through user input and is searchable to provide the most relevant documents pertaining to the term or terms searched. (*Id.*, col. 40:13-35)  Claim 21, for example, appears to recite an application of this concept, and includes additional details as to how information is promoted based on popularity. (*Id.*, col. 56:9-29)

The Complaint alleges that the '176 patent provides a novel approach for generating a newsfeed and/or ticker, and that a claimed module allows network users to vote on certain information; stores the information in a set of databases that associates votes with the information and their associated content/URLs; and thereafter publishes the information via a real-time newsfeed or ticker in a listing ranked in part on the popularity of the information. (D.I. 1 at ¶¶ 19-20)

The Court cannot conclude at this time that, taken as an ordered combination, the invention was a well-understood, routine, or conventional application of promoting information based on popularity. *See Aatrix Software*, 882 F.3d at 1129.  Further factual development regarding just how unconventional or innovative this application was at the time might impact the Section 101 inquiry.  For these reasons, this portion of the Motion will be denied without prejudice to Defendants' ability to raise a Section 101 challenge at the summary judgment stage.

**IV.     CONCLUSION**

For the foregoing reasons, the Court will grant the Motion as to the asserted claims of the '828 patent and deny it as to the asserted claims of the '176 patent, without prejudice to Defendants' ability to raise a Section 101 challenge at the summary judgment stage.  An appropriate order follows.